321 So.2d 277

**Donald V. STINSON, alias**

**v.**

**STATE.**

**6 Div. 687.**

Court of Criminal Appeals of Alabama.

July 29, 1975.

Rehearing Denied Oct. 21, 1975.

Emily B. Gassenheimer, Montgomery, for appellant.

William J. Baxley, Atty. Gen., Montgomery, and Quentin O. Brown, Jr., Asst. Atty. Gen., Birmingham, for the State.

CATES, Presiding Judge.

Stinson appeals from a conviction of robbery for which the jury set his punishment at twenty years imprisonment.

I

We set out the tendencies of the State's proof because presumptively the jury, by their verdict of guilt, relied thereon.

About 7:30 p. m., December 29, 1972, Mr. Gary Wyatt drove to the parking lot of the Western Super Market in Hoover, a suburb of Birmingham. The store was located alongside U. S. Highway 31.

Mr. Wyatt, before he went in the store, noticed the driver of a two-tone Pontiac. Coming from the store three or four minutes later, Wyatt again saw this person, at this time, driving from the interior of the lot to the store entrance. Wearing a dark hooded military poncho, carrying a wadded up bundle, the stranger (to Wyatt) went into the supermarket. Wyatt used the mobile phone in his car to notify the Hoover Police dispatcher.

Wyatt saw the Pontiac's driver go to the supermarket manager's office, then run out of the store to the car and drive away. Wyatt followed the Pontiac which went into an alley behind another grocery store. The driver there left the Pontiac and got into the passenger's side of another car. Wyatt, maintaining contact with the dispatcher, again followed. After a few blocks both cars came to U. S. Highway 31 where a red light held up traffic until two police cars arrived and blocked the road.

Officer Ray of the Hoover Police Department identified Stinson as the passenger in the car which Wyatt had followed. Mrs. Stinson was the driver.[1] Looking through the windshield Ray saw a black satchel from which paper money protruded. He seized the satchel. Inside he found seventeen hundred and fifty dollars in assorted bills, a check endorsed for deposit to Western Super Market and a rubberized

1. See *Stinson v. State*, 55 Ala.Cr.App. 629, 318 So.2d 325 (1975).

mask. Beside Stinson was a rubberized dark green raincoat.

The testimony of the store manager, Wyatt and Officer Ray linked a set of circumstances sufficient to support the jury's verdict.

## II

A search of the abandoned two-tone Pontiac—made within three or four minutes after Ray apprehended Stinson—yielded a loaded pistol. It was found in full view lying on the front seat. The officer who found it was in the shopping center alley—virtually a public way. He did not open the car door until after he had seen the gun. No objection was made to Ray's testimony that the car was stolen.

Stinson had no standing to complain of the seizure of the gun. Moreover, the interval between the crime and capture presents a stronger circumstantial web than that approved in *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419.

## III

The seizure of the satchel at the road block falls under plain view. Ray had probable cause both from radio dispatches and Wyatt's on the scene information to believe that Stinson had committed a felony, robbery. The satchel, with money showing, was inferably the fruit of the crime and hence seizable as evidence. The trial judge correctly ruled the satchel, mask and raincoat were admissible for the jury to examine.

## IV

The defendant called an FBI agent and asked him:

"Mr. Haven, did my wife or John Aims, who was later convicted of bank robbery, did Mr. Aims or my wife, either one, ever make a statement that Mr. Aims robbed this place and I did not know anything about it?"

Aims was in a Federal penitentiary. He could have been interrogated with the resulting deposition available as evidence. Code 1940, T. 15, §§ 297 & 298.

The question put to Agent Haven called for inadmissible hearsay. *Snow v. State,* 58 Ala. 372. There was no error in the trial court's sustaining the State's objection to the question set out below.

## V

Appellant complains of "a multitude of errors and inconsistencies" but cites no adverse ruling of the trial judge.

The settled interpretation of Code 1940, T. 15, § 389, is that this court in searching the record is confined to points on which rulings adverse to the defendant are had in the trial court. The Plain Error doctrine applies to death penalty cases but not to other convictions. *Echols v. State,* 47 Ala.App. 23, 249 So.2d 639.

The judgment below is

Affirmed.

All the Judges concur.

## ON REHEARING

CATES, Presiding Judge.

In giving his oral charge to the jury the trial judge read to them the whole of the indictment omitting only the caption and the endorsements. Further, he stated the State must convince them beyond a reasonable doubt of the material averments of the indictment.

The indictment thus read to jury was the proper one, charging robbery of B. J. Waldrip who was proved to be the manager of the Western Super Market.

As the jury filed from courtroom the court addressed counsel for both parties:

"The indictment, here it is. Gentlemen, you check if you will, so that nothing will go back that is not in evidence."

Ten minutes later, the defendant and counsel being present, the jury through the bailiff advised that it had received the wrong indictment, i.e., one against Stinson for grand larceny of a Pontiac car. The correct one was sent in to the jury.

After the verdict, appellant orally moved to set it aside because of the jury's having the improper indictment.

While under 51 Ala.R.Civ.Pr., pleadings may not go out, the rule is otherwise in criminal trials.

█ It is proper for the indictment to go to the jury room with the jury. 23A C.J.S. Criminal Law § 1369, 75 AmJur2d, Trial § 1027.

In *Sanders v. State*, 131 Ala. 1, 31 So. 564, McClellan, C. J., said, "It was necessary that the indictment should be taken by the jury on their retirement * * *." Apparently, it is adjured in such cases that, *upon request,* the trial judge direct the jury that the true bill is not evidence. *Little v. United States*, 10 Cir., 73 F.2d 861.

In *People v. Katz,* 356 Ill. 440, 190 N.E. 913, the State had nol prossed three of the four counts of the indictment. The court found the defendant was not prejudiced by the jury's having the whole indictment with them. See also Anno. 120 A.L.R. 463 and ABA Standards for Crim.Justice, Trial by Jury, § 5.1(a).

█ Apparently the errant indictment here was for stealing the car used to go to and from the Western Super Market. The use of this stolen vehicle inferably to throw pursuers off the trail made evidence of its existence relevant under the general issue framed by Stinson's plea to the robbery indictment. Hence, we find no prejudicial error in the inadvertent substitution of the wrong indictment. The *Katz* case, supra, affords an analogous rationale.

We have examined the applications both pro se and of counsel and consider we should extend them.

Opinion extended.

Application overruled.

All the Judges concur.